IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS SCHUTZE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v | § | CIVIL NO. 3:04-CV-0276-H |
| | § | ECF |
| FINANCIAL COMPUTER | § | |
| SOFTWARE, LP; JP MORGAN CHASE | § | |
| BANK; JP MORGAN FCS | § | |
| CORPORATION; JAMES DONDERO; | § | |
| MARK MURRAY; KEVIN | § | |
| MACDONALD; and HIGHLAND | § | |
| CAPITAL MANAGEMENT, LP, | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment and supporting brief and appendix, filed January 17, 2006; Defendants' Response, and supporting brief and appendix, filed February 6, 2006; Plaintiff's Reply, filed February 21, 2006; Defendants' Motion for Summary Judgment, filed January 10, 2006; Defendants JP Morgan Chase Bank and JP Morgan FCS, Corp.'s Joinder in Defendants' Motion for Summary Judgment, filed January 13, 2006; Plaintiff's Response to Defendants' Motion for Summary Judgment, filed February 13, 2006; Defendants' Reply to Plaintiff's Response, filed February 21, 2006; Plaintiff's Supplemental Summary Judgment Briefing and Evidence, filed September 15, 2006; Defendants' Response in Opposition to Plaintiff's Motion for Leave to Supplement, filed September 22, 2006; and Reply to Defendants' Response, filed September 29, 2006.

For the reasons that follow, Plaintiff's motion for summary judgment is denied; and Defendants' motions for summary judgment are granted in part and denied in part.

## I. Background

From February 2002 until April 2002, Plaintiff Thomas Schutze worked as a consultant for Defendant Financial Computer Software, L.P. ["FCS"]. FCS is a Delaware limited partnership that was, before most of its assets were acquired in 2003 by Defendant JP Morgan Chase Bank ["Chase"], a producer and seller of business software systems. Immediately following Plaintiff's consultancy, FCS hired Schutze as a senior client relationship manager in April 2002. Approximately six months later, on November 4, 2002, FCS terminated Schutze's employment.

During Plaintiff's employment he developed serious illness. As a result, he began regularly accessing his employee health benefits and was near the point of filing for short-term and long-term disability benefits. Plaintiff alleges, *inter alia*, that because the employee benefit plan of FCS was self-insured, FCS discharged him to eliminate the future cost burden of his illness and disability.

In addition, Plaintiff's personal and workplace values were not a good fit at FCS, which Plaintiff alleges to have had an alcohol-fueled, scofflaw, party-hearty corporate culture, with special emphasis on company-sponsored road trips to Las Vegas and sexual promiscuity. Based on that culture are Plaintiffs' causes of action for hostile work environment, along with age and disability discrimination. Furthermore, Plaintiff asserts, among many other grievances, that FCS failed to honor certain promises regarding employee benefits and a bonus.

On February 9, 2004, this lawsuit, originally filed in state court, was removed to the Northern District on the basis of federal question jurisdiction.  Plaintiff's claims include Employment Retirement Income Security Act ["ERISA"] retaliation and interference; Texas Commission on Human Rights Act ["TCHRA"] disability discrimination, age discrimination, hostile working environment, and retaliatory discharge; Federal Labor Standards Act ["FLSA"] unpaid overtime; and various tort, contract, statutory, and equitable claims arising under Texas law.[1]  On the claim for fraudulent misrepresentation, Plaintiff moves for summary judgment.  Defendants move for summary judgment on all of Plaintiff's claims.

## II.  Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment shall be rendered when the evidence establishes that no genuine issue exists as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994); *Armstrong v. City of Dallas*, 829 F. Supp. 875, 876 (N.D. Tex. 1992), *aff'd* 997 F.2d 62 (5th Cir. 1993). Under proper circumstances, awarding summary judgment is favored in the federal courts: "Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

---

[1]  Claims for "piercing the corporate veil" and "spoliation," to the extent, if at all, that they were intended to have been pleaded as independent causes of action, have been voluntarily abandoned, though Plaintiff retains the charge of spoliation for purposes of evidentiary relief at trial.

3

A summary judgement movant must inform the court of its basis for the motion and identify the material specified in Rule 56(c) that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (en banc).

If the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 324. A party opposing summary judgment must go beyond the pleadings and "set forth specific facts" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ruiz*, 12 F.3d at 513; *Armstrong*, 829 F. Supp. at 876. A party opposing summary judgment may not rest on mere conclusory allegations or denials in the pleadings. Fed. R. Civ. P. 56(e); *see also Hightower v. Texas Hosp. Ass'n.*, 65 F.3d 443, 447 (5th Cir. 1995). Furthermore, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. There must be "significant probative evidence" on which a jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 249.

In determining whether a genuine issue exists for trial, the Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the nonmovant. *Eastman Kodak v. Image Technical Servs., Inc.*, 504 U.S. 451, 456-58 (1992); *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.

1990); s*ee also Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir. 1993).  If the record, taken as a whole, cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue remains for trial. *Matsushita*, 475 U.S. at 587; *see Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

With these standards in mind, the Court turns to an analysis of the motions at hand.

### III.  Analysis

A.    Plaintiff Schutze's Motion for Partial Summary Judgment

Plaintiff moves for summary judgment on only one cause of action, his claim for fraud.  Plaintiff alleges that FCS induced him to accept employment by misrepresenting the nature of employee benefits he would receive.

Under Texas law, the elements of fraud are (1) that a material representation was made; (2) that the representation was false; (3) that when the representation was made, the speaker knew it was false, or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that the speaker made the misrepresentation with the intent that the other party should act upon it; (5) that the party acted in reliance on the misrepresentation; and (6) that the party thereby suffered injury.  *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001).

As a threshold matter, the Court overrules FCS's argument that Plaintiff's fraud claim is preempted by ERISA.  To prove preemption, FCS must show (1) that the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an employee benefits plan; and (2) that the claim directly affects the relationship among traditional ERISA entities (the employer, the plan and its fiduciaries,

and the participants and beneficiaries). *Mayeaux v. Louisiana Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004). For the second requirement, the "critical distinction" is not whether the parties are traditional ERISA entities in any capacity, but instead whether the relevant state law "affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank of La. v. Aetna US Healthcare, Inc.*, --- F.3d ---, 2006 WL 2212021, *4-5 (5th Cir. 2006). The determination centers on the question whether the claim creates a relationship "so intertwined with an ERISA plan that it cannot be separated." *Id*. at *4 (citing *Hobson v. Robinson*, 75 Fed. Appx. 949, 955 (5th Cir. 2003) (unpublished)).

In this case, the alleged fraud occurred before Plaintiff was employed by FCS, and was allegedly perpetrated for the purpose of inducing him into employment. The relationship was not yet regulated by ERISA, and ERISA therefore does not preempt the state-law claim. *See Perkins v. Time Ins. Co.*, 898 F.2d 470, 473-74 (5th Cir. 1990) (finding no preemption for an agent's misrepresentation of a benefits package to a prospective participant); *Hobson*, 75 Fed. Appx. at 956 ("[A] state law claim for fraudulent inducement is not preempted by ERISA."); *see also Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 162-63 (6th Cir. 1989) (holding that state claims alleging fraudulent inducement to participate in an ERISA plan are not preempted).

As to the merits of Plaintiff's claim, core facts on the nature of FCS's representation to Plaintiff are in dispute. *Compare, e.g.,* Schutze Aff. ¶¶ 3-4, Plf. App. at 1-2 *with* Murray Dep. at 17-18, 23-24. Accordingly, Plaintiff's motion for summary judgment must be denied. *See* FED. R. CIV. P. 56.

B.     FCS Defendants' Motion for Summary Judgment

The FCS Defendants ask for summary judgment on each of Plaintiff's claims.

1.     TCHRA Disability Discrimination

Plaintiff claims that in violation of the TCHRA, he was terminated because of his disabilities.  The FCS Defendants move for summary judgment on this cause of action.

At the summary judgment stage, a TCHRA discrimination claim is analyzed under the familiar *McDonnell Douglas* burden-shifting framework.  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).  To establish a *prima facie* case of discrimination, Plaintiff must show (1) that he is disabled or regarded as disabled; (2) that he is qualified for his job; (3) that he was subjected to an adverse employment action on account of his disability; and (4) that he was replaced by or treated less favorably than non-disabled employees.  *See Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *see also Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 925 (S.D. Tex. 2002) (noting that the TCHRA is interpreted in the same way as the Americans with Disabilities Act ["ADA"]).

With regard to the first element, a "qualified individual" is someone who "with or without reasonable accommodations can perform the essential functions of the relevant employment position."  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002) (citing 42 U.S.C. § 12111(8)).   Defendants contend that Plaintiff is not a qualified individual because he could not perform his job.  They point as conclusive evidence of that fact to Plaintiff's treating physician's testimony (which Plaintiff corroborates) that Plaintiff's recurrent aspiration pneumonia and mixed connective tissue disorder have rendered him

permanently disabled, and would have prevented him from working at all in the weeks leading up to his termination, whether or not he was accommodated in the workplace. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (holding that representation of total disability is inconsistent with later ADA claim brought as "qualified individual"); Mathias Dep. at 43-44, 69-70; Schutze dep. at 342-43.  Rebutting this evidence, however, is the undisputed fact that regardless of his condition, Plaintiff did actually continue to work full time up to the date of his termination.

Common sense implies a fact question here.

With regard to the remainder of the elements for a *prima facie* disability discrimination cause of action, Plaintiff similarly raises genuine issues of material fact. *See, e.g.*, Plf. App. at 24, 87.  Furthermore, to rebut Defendants' successful offering of a legitimate reason for Plaintiff's termination, Plaintiff offers substantial evidence (discussed below in the section on ERISA discrimination) from which "pretext" and causation may be inferred.  *See Machinchick*, 398 F.3d at 357-58 (setting out the burden-shifting and causation analyses).  Plaintiff's disability discrimination claim will be for trial.

2.    TCHRA Age Discrimination

FCS next moves for summary judgment on Plaintiff's cause of action for age discrimination under the TCHRA.  To establish a *prima facie* case of age discrimination, Plaintiff must show (1) that he was discharged; (2) that he was forty or more years of age at the time of discharge; (3) that he was qualified for the position that he held; and (4) that he was either replaced by someone outside the protected class, or by someone

younger, or that he was otherwise discharged because of age.  *See Davis v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996).

In the present motion, FCS moves for summary judgment on the basis of the "same actor" inference; and the Court agrees that it applies under the circumstances of this case.  Plaintiff was hired by Defendant Mark Murray at the age of forty and fired by Murray a mere six months later.  Under those circumstances, an inference exists that the termination was not motivated by age-related *animus*.  *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) ("From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job.") (internal quotations omitted).  The inference serves to negate a plaintiff's allegation that non-discriminatory reasons given for termination are pretextual. *See id*.

In rebuttal to the same-actor inference raised by FCS, Plaintiff offers evidence that Murray was unaware of Plaintiff's age at first; that Plaintiff's illness began making Plaintiff look older; that a company retreat in Las Vegas, at which a scavenger hunt game was played, highlighted Plaintiff's advanced age in relation to the other employees; that Plaintiff was criticized by his superiors for not being able to keep up in the scavenger hunt; and that the corporate culture at FCS was juvenile.  Thus, Plaintiff argues that it is possible to conclude that Murray only belatedly realized that Plaintiff was over forty, and promptly terminated him.

In *Brown v. CSC Logic, Inc.*, a Fifth Circuit decision the Court finds to be controlling, the plaintiff was hired at the age of fifty-four and fired four full years later by the same person.  The plaintiff's complaint of discriminatory *animus* was direct and

plain.    The evidence established four explicitly age-oriented pre-termination discriminatory and offensive comments, including "you're getting too old" and that "senility was setting in."  *See id.* at 656.  Even in the presence of such a smoking *animus* gun as those statements, the Fifth Circuit applied the same-actor inference to negate "pretext" and to dismiss the plaintiff's age discrimination claim as a matter of law.  *See id*.  In this case, in contrast, age-related *animus* exists, if at all, by inference alone; and the time of employment was even more brief.  Under these circumstances, the Court holds that the same-actor inference applies to refute Plaintiff's claim.

Indeed, Plaintiff is unable under these facts to establish a fact issue of age-related *animus* at all.  Social immaturity is not necessarily age-related.  Evidence of the former alone, regardless of strength, does not raise an inference of the latter sufficient to support a cause of action in the federal court.  Plaintiff's claim for age discrimination is dismissed.

> 3.    TCHRA Retaliation

Defendants next move for summary judgment on Plaintiff's retaliation claim under the TCHRA.  To establish a *prima facie* case of TCHRA retaliation, a plaintiff must show (1) that he engaged in protected activity; (2)  that he suffered an adverse employment action; (3) and that a causal connection exists between the protected activity and the adverse action.  *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).  Under the TCHRA, an employee engages in a protected activity if he (1) opposes a discriminatory practice; (2)  makes or files a discrimination charge; (3) files a discrimination complaint; or (4) testifies, assists or participates in any manner in an investigation, proceeding or hearing.  Tex. Lab. Code. § 21.055.

In this case, Plaintiff does not offer any evidence, or even allege, that he engaged in a protected activity covered by the statute.  Instead he alleges, without legal argument or citation to authority: "Schutze participated in a protected activity when he accessed his health care benefits."  Plf. Brf. at 36.  Without more, the Court declines to broaden the express statutory scope of "protected activity" to include this alleged basis for a cause of action for retaliation under the TCHRA.  The claim is dismissed.

4    ERISA Claims

The rejected basis for the TCHRA claim, however, does serve to support a claim under ERISA.  Section 1140 of ERISA makes it unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an ERISA] plan . . .." 29 U.S.C. § 1140; *see id.* § 1132.  Section 1140 therefore consists of two components: (1) an anti-retaliation component, which prohibits an employer from retaliating against an employee for exercising ERISA rights; and (2) an anti-interference component, which prohibits an employer from taking any action that wrongfully interferes with an employee's future rights to benefits. *Kirby v. SBC Servs., Inc.*, 391 F. Supp. 2d 445, 454 -455 (N.D. Tex. 2005).

An essential element of the retaliation claim is specific discriminatory intent. *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 761 (5th Cir.1996) (citing *Hines v. Massachusetts Mut. Life Ins. Co.*, 43 F.3d 207, 209 (5th Cir.1995)). A plaintiff need not prove that the discriminatory reason was the only reason for discharge, but he or

11

she must show that the loss of benefits was more than an "incidental loss" resulting from his discharge. *See id.* An inference of specific discriminatory intent can be proved by circumstantial evidence. *Id.* Once a plaintiff establishes a *prima facie* case, the defendant must articulate a non-discriminatory reason for its actions; the burden then shifts to the plaintiff prove this reason is a pretext. *See id.*

Here, Plaintiff's ERISA causes of action, along with the TCHRA disability discrimination claim, are the core issues in the case. For his ERISA retaliation claim, Plaintiff offers evidence that FCS knew of his significant and increasing benefit claims; That FCS knew of his bad and worsening health; that his termination was suspiciously handled, and handled unlike that of other employees; that Plaintiff was not given any oral or written notice that he was in danger of being fired; that Plaintiff's prior successful work history and good feedback rebuts FCS's *post facto* reasons for firing him; that at least some of FCS's stated reasons for the termination proved to be false; that shortly before his termination, FCS knew Plaintiff was going into the hospital the following week; that in the weeks preceding his termination, FCS continued to assign Plaintiff significant client projects. As to the claim for ERISA interference, the same facts are relevant, along with medical testimony of impending permanent disability. In short, Plaintiff offers substantial evidence from which the Court finds, without further need of discussion, inferences creating genuine questions of material fact whether Plaintiff was terminated in violation of ERISA, and whether his ERISA rights were victim to FCS's interference.

5.     *Sabine Pilot* Wrongful Termination Claim

The FCS Defendants move next for summary judgment on Plaintiff's claim that he was terminated for refusing to engage in unlawful activities.  In its decision in *Sabine Pilot*, the Texas Supreme Court created a narrow exception to the employment-at-will doctrine: an employer may not that discharge an employee for the sole reason that the employee refuses to perform an illegal act.  *Sabine Pilot Servs. v. Hauck*, 687 S.W.2d 733, 736 (Tex. 1985).  Although Plaintiff alleges in his pleadings as grounds for this claim that he was required to engage in multiple acts of illegal gambling, alcohol consumption, and other activities, his summary judgment response narrows the issue down to one allegation.  Plaintiff maintains that FCS required him to use unlicensed software.  *See* Plf. Brf. at 54-56.  Use of unlicensed software can result in civil and criminal penalties.  *See* 17 U.S.C. § 506; 18 U.S.C. § 2319.  Plaintiff, after admittedly using the software on one occasion, thereafter refused to use it and had it removed from his computer.  *See* Plf. App. at 21-22.

To state a *Sabine Pilot* claim for wrongful termination, a plaintiff must show (1) that he was required to commit an illegal act that carries criminal penalties; (2) that he refused to perform the allegedly illegal act; (3) that he was discharged; and (4) that the sole reason for his discharge was his refusal to commit an unlawful act.  *White v. FCI USD, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003).  A "key component" of the Sabine Pilot exception is that the wrongful discharge claim is the sole reason for discharge. *Denson v. Meadwestvaco Corp.*, 2005 WL 2179116, *7 (N.D. Tex. 2005) (Lynn, J.).  It has been consistently held in this Circuit that "an employee who alleges wrongful discharge for refusing to perform a criminal act cannot advance additional claims."  *Id.* (citing *Pease v.*

*Pakhoed*, 980 F.2d 995, 997 n. 1 (5th Cir. 1993); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 953 (5th Cir. 1994); *Hancock v. Express One Intern., Inc.*, 800 S.W.2d 634, 636 (Tex. App.--Dallas 1990, writ denied).

In this case, Plaintiff's myriad accusations, particularly the well-supported disability discrimination and ERISA claims, work against him to preclude relief.  Even if Plaintiff has properly pled in the alternative, he has not established an issue of fact that use of the illegal software was an FCS job requirement.  *See White*, 319 F.3d at 676.  The *Sabine Pilot* claim fails.

6.       ERISA Preemption

The FCS Defendants move for summary judgment on a large number of Plaintiff's stated causes of action on grounds that they are preempted by ERISA.  *See* 29 U.S.C. § 1002.  Plaintiff's pleadings in this regard can best (and charitably) be described as indiscriminate.  As a threshold matter, the Court holds that under the facts submitted, FCS's medical, dental and disability plans are "employee welfare benefit plans" within the meaning of the statute.  *E.g., id.* § 1002(1), (3); *see Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985) (allowing self-insured programs).

The law governing ERISA preemption is set out above in the discussion of Plaintiff's motion for summary judgment.  *See Bank of La. v. Aetna US Healthcare, Inc.*, --- F.3d ---, 2006 WL 2212021, *4-5 (5th Cir. 2006) (discussing the standard).  Applying that standard to the summary judgment evidence here, the Court concludes as follows.  Plaintiff's claim for fraudulent inducement, related to the alleged misrepresentation(s) to induce Plaintiff to participate in the FCS benefits plan, has already been held not to be preempted.  Plaintiff's claims for breach of fiduciary duty, however, both common-law

14

and based on the Texas Insurance Code, clearly arise in major part after Plaintiff began participation in the plan; they involve traditional plan entities of employer, employee, and administrator; and they are "so intertwined with an ERISA plan that [they] cannot be separated." *Id; see Hansen v. Continental Ins. Co.*, 940 F.2d 971, 979 (5th Cir. 1991); *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 764-65 (5th Cir. 1989). Similarly, Plaintiff's claims based on COBRA premiums are preempted. *See Cornett v. Aetna Life Ins. Co.*, 933 F. Supp. 641, 643 n. 6 (S.D. Tex. 1995) (noting that COBRA is an ERISA amendment). The breach of contract claims, however, arising before and separately from Plaintiff's participation in the benefits plan, are not preempted. *See Bank of La.*, --- F.3d ---, 2006 WL 2212021 at *4-5.

In summary, Plaintiff's claims for breach of fiduciary duty and COBRA abuse are dismissed; and Plaintiff's claims for fraudulent misrepresentation and breach of contract, subject to the discussion below, are for trial.

7.      Contract and Quasi-Contract Claims

The FCS Defendants move for summary judgment on Plaintiff's contract and quasi-contract claims. On the issues of oral contract and of *quantum meruit*, in the alternative, Plaintiff has raised a sufficient question of fact to proceed to trial. The claims based on written contract, however, must fail.

There was no formal executed employment contract between the parties. The causes of action for breach of written contract rest solely on alleged violations of the FCS Employee Handbook and of Plaintiff's "offer letter." The handbook by its own terms does not create a contract with FCS employees. *E.g.*, Plf. Dep. Ex. 8 at 4 ("The [FCS] Employee Handbook is only a general guide . . . and is not intended to be and should not

15

be construed as a contract of employment."); *see Zenor v. El Paso Healthcare Sys Ltd*, 176 F.3d 847, 862-63 (5th Cir. 1999) (holding that handbooks with express disclaimers do not create contractual rights).  As to the offer letter, Plaintiff by his own admission rejected it.  Plf. Dep. at 47-48.  Accordingly, Plaintiff's claims for breach of written contract are dismissed.

        8.     Remaining Claims

      For all other asserted claims, the Court after a review of the evidentiary record and after considering the argument of counsel, finds that Defendants are not entitled to judgment as a matter of law; and that Plaintiff has met his summary judgment burden of raising genuine issues of material fact.  *See* Fed. R. Civ. P. 56.  Accordingly, claims not expressly dismissed herein will be for trial.

C.     <u>JP Morgan Defendants' Motion for Summary Judgment</u>

      In addition to joining the FCS Defendants' motion for summary judgment, Defendants JP Morgan Chase Bank ["Chase"] and JP Morgan FCS, Corp. [collectively, "JP Morgan Defendants"] file their own motion on independent grounds.  On December 9, 2003, Chase entered into an asset purchase agreement ["APA"] with FCS.  In the APA, Chase purchased substantially all of FCS's assets, except for certain "excluded assets," consisting of all assets related to FCS's employee benefit plans, claims for tax refunds, and rights and obligations relating to certain clients excluded from the sale.  *See* APA, ¶ 2.2.  Subject to the APA's terms, Chase formed a subsidiary, JP Morgan FCS, Corp. ["JP Morgan FCS"] to hold the purchased assets.  Individual defendants Mark Murray, James Dondero, and Kevin McDonald, all of whom were partners in FCS at the time of Plaintiff's employment, are now directors of JP Morgan FCS.  The APA was executed

16

well after the events from which this lawsuit arises, and Plaintiff sues the JP Morgan Defendants solely as alleged successor entities to FCS. The JP Morgan Defendants move for summary judgment on all of Plaintiff's claims.

      1.     State-law Claims

      JP Morgan Defendants contend that none of Plaintiff's state-law claims can be brought against them, and the Court agrees. In the APA, FCS and Chase agreed that New York law would apply. The general rule under New York law is that "a corporation which acquires the assets of another is not liable for the torts of its predecessor." *Schumacher v. Richards Shear Co., Inc.*, 451 N.E.2d 195, 198 (N.Y. 1983). Some exceptions exist. A buyer of assets can be held responsible for the liabilities of the selling company only if (1) the buyer expressly or impliedly assumes the liabilities in the asset purchase agreement; (2) there is a de facto merger between the buyer and seller; (3) the purchaser acts as a "mere continuation" of the seller; or (4) the parties enter into the transaction for the purpose of fraudulently avoiding the seller's obligations. *Id.*

      In this case for which there is no evidence of anything but an arms-length transaction, only the third ground is colorable. As to that ground, the "mere continuation" theory applies where only one corporation survives the transaction and the predecessor corporation is extinguished. *See id*. If the asset seller survives the sale in any form the "mere continuation" theory does not apply. *See In re Seventh Judicial Dist. Asbestos Litig*., 788 N.Y.S.2d 579, 581-82 (N.Y. Sup. Ct. 2005).

      Here it is undisputed that the seller, FCS, continues to exist to this day as a limited partnership. FCS is separately represented in this case, and the individual defendants remain FCS limited partners. Accordingly, the JP Morgan Defendants are not

a "mere continuation" of FCS, and Plaintiff's remaining state-law claims are dismissed as to the JP Morgan Defendants under New York law.

The same result is reached by applying Texas law.  *See Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.) (citing policy reasons for applying Texas law of successor liability even in the presence of a valid choice-of-law clause in the asset purchase agreement).  Under Texas law, a buyer of assets is liable for the conduct of the predecessor owner only if the buyer expressly assumes the liability.  Tex. Bus. Corp. Act art 5.10B(2); *see Mudgett*, 709 S.W.2d at 758. Under the terms of the APA, Chase expressly refrained from assuming FCS liabilities arising before the asset sale.  APA ¶ 2.4.  Whether New York or Texas law is applied, Plaintiff's claims arising under state law cannot be maintained.[2]

2.      Federal Claims

For Plaintiff's federal claims, the Court reaches a different result.  The standard for imposing successor liability for federal employment claims requires the district court to consider nine factors, the first two of which are key: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether the new employer uses the same or

---

[2] This is clearly true for Plaintiff's common-law claims. It is unclear to the Court from the briefing, however, whether New York and/or Texas law preclude Plaintiff's statutory state-law claims as well.  Defendants assert that all state-law claims, regardless of their nature, are so precluded.  Because Plaintiff did not meet his burden of refuting that assertion, the statutory claims are dismissed in this case.  However, nothing in this opinion is intended to serve as precedent on the issue.

18

substantially the same work force; (6) whether the new employer uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether the new employer uses the same machinery, equipment, and methods of production; and (9) whether the new employer produces the same product. *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996).

In this case, Plaintiff produces evidence creating fact issues as to most of the *Rojas* factors, including the critical first two. With regard to the first factor, Plaintiff offers evidence that Defendants had actual or constructive notice of Plaintiff's federal claims. On November 8, 2002, well before execution of the APA, Plaintiff's attorney sent FCS a letter outlining the potential for a legal battle. *See* Plf. App. at 1 (mentioning the FLSA claim and stating also: "I believe that Mr. Schutze has significant claims against your company for discrimination based on, among other things, disability, age and retaliation."). To the extent, as the JP Morgan Defendants argue, that FCS understated the potential liability of Plaintiff's claims in negotiations for the APA, and also in recitals therein, that matter is between FCS and Chase and does not negate the bald existence of the notice itself.

With regard to the second *Rojas* factor, the ability of the predecessor FCS to provide relief for the claims asserted, the JP Morgan Defendants argue that pursuant to the APA, FCS has in the past received cash amounts totaling in the millions of dollars from Chase and has the potential to receive more in the future. As for FCS's ability to satisfy a judgment against it today, however, not a shred of evidence is offered, nor

stipulation made.  In neither the first nor second *Rojas* factor, therefore, does the balance weigh in Defendants' favor.

As probative of the remaining *Rojas* factors, Plaintiff points out that the JP Morgan Defendants consistently represent to the public that JP Morgan FCS is a continuation of FCS.  *See* www.fcsoft.com.  The successor's offices are the same.  *See id*. Terms of the APA require that the buyer retain FCS employees.  APA ¶ 9.1.  Some supervisors have not changed.  *See* Plf. App. at 66-67, 142, 144.  In short, clear fact issues exist whether the JP Morgan Defendants should be held liable as FCS's successor on Plaintiff's federal claims; and if anything, the evidence weighs entirely in Plaintiff's favor.  The federal claims against the JP Morgan Defendants as successor entities to FCS will proceed to trial.

## IV.  Conclusion

For the reasons given above, Plaintiff's motion for partial summary judgment is **DENIED**.

The FCS Defendants' motion for summary judgment, which the JP Morgan Defendants have joined, is **GRANTED IN PART**.  Plaintiff's claims for TCHRA age discrimination, TCHRA retaliation, wrongful termination under *Sabine Pilot*, breach of fiduciary duty (common-law and Texas Insurance Code), COBRA fraud, and breach of written contract are **DISMISSED** as to all Defendants.  In all other things, the FCS Defendants' motion is **DENIED**.

The JP Morgan Defendants' motion for summary judgment is **GRANTED** as to all of Plaintiff's state-law claims and is otherwise **DENIED**.

In the interests of justice, Plaintiff's motion for leave to file supplement summary judgment briefing and evidence is **GRANTED**, and the attached supplemental brief and appendix are deemed filed as of September 15, 2006.  Defendants' motion to dismiss, superseded by the motion for summary judgment, is **DENIED AS MOOT**.

SO ORDERED.

DATED: September 29, 2006.

BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS